SD/SK:GMP/GKS/MPR
F. #2015R00471/OCDETF # NY-NYE-777

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

RAFAEL CARO QUINTERO,
  also known as "RCQ," "Cesar,"
  "Don Rafa," "Rafa," "El Senor," "28,"
  "R1," "Compa," "El Hombre," "El
  Pleve," "El Canoso," "El Crespo" and
  "the Old Man,"



Defendants.

- - - - - - - - - - - - - -X

SUPERSEDING
INDICTMENT

Cr. No. 15-208 (S-3)(FB)
(T. 18, U.S.C., §§ 924(c)(1)(A)(i),
924(c)(1)(A)(ii), 924(c)(1)(A)(iii),
924(d)(1), 3238, 2 and 3551 et seq.; T. 21,
U.S.C., §§ 848(a), 848(b), 848(c), 853(a),
853(p), 959(d), 960(b)(1)(A),
960(b)(1)(B)(ii), 960(b)(1)(G),
960(b)(1)(H), 963 and 970; T. 28, U.S.C.,
§ 2461(c))



THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Superseding Indictment, unless otherwise indicated:

1. From at least January 1980 until June 2018, the defendants RAFAEL CARO QUINTERO, also known as "RCQ," "Cesar," "Don Rafa," "Rafa," "El Senor," "28," "R1," "Compa," "El Hombre," "El Pleve," "El Canoso," "El Crespo" and "the Old Man," ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ were members of an international drug trafficking organization led by RAFAEL CARO QUINTERO (the "Caro Quintero DTO").

2. The Caro Quintero DTO operated a vast network responsible for the manufacture and importation of narcotics, specifically multi-ton quantities of heroin, methamphetamine and marijuana, from Mexico into the United States and elsewhere. The Caro Quintero DTO also was responsible for the shipment of multi-ton quantities of cocaine from South America through Central America and Mexico to the United States and elsewhere. The vast majority of drugs trafficked by the Caro Quintero DTO were imported into the United States, where the drugs were consumed. The Caro Quintero DTO used corruption as a means and method of achieving its goals.

3. The Caro Quintero DTO's drug sales in the United States generated millions of dollars in profit. The drug proceeds were laundered back to Mexico; often, the drug money was physically transported from the United States to Mexico through clandestine means.

4. The Caro Quintero DTO had an organizational structure that included: (a) the leadership of the Caro Quintero DTO, who were the ultimate decision makers in the organization with respect to its drug trafficking and money laundering activities, as well as the corruption and enforcement activities undertaken to preserve and protect its illegal activities; (b) security personnel, who protected the leadership of the Caro Quintero DTO and engaged in violent acts to further the goals of the organization; (c) plaza bosses, who controlled certain territories for the Caro Quintero DTO and were responsible for transporting drugs through those territories; (d) transporters, such as boat crews, pilots and truck drivers, who transported drugs from Colombia through Mexico and into the United States; and (e) money launderers, who funneled drug proceeds from the United States back to Mexico.

5. The leaders of the Caro Quintero DTO employed "sicarios," or hitmen, who carried out numerous acts of violence, including murders, assaults, kidnappings and acts of torture. The leaders of the Caro Quintero DTO directed and ordered these acts of violence for a variety of reasons, including but not limited to:

(a) Promoting and enhancing the prestige, reputation and position of the Caro Quintero DTO with respect to rival criminal organizations;

(b) Preserving and protecting the power, territory and criminal ventures of the Caro Quintero DTO;

(c) Enforcing discipline amongst its members and associates by punishing disloyalty and failure; and

(d)     Protecting members of the Caro Quintero DTO from arrest and prosecution by silencing potential witnesses and retaliating against anyone who provided information or assistance to law enforcement authorities.

## COUNT ONE
(Continuing Criminal Enterprise)

6.     The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

7.     In or about and between January 1980 and June 2018, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendant RAFAEL CARO QUINTERO, also known as "RCQ," "Cesar," "Don Rafa," "Rafa," "El Senor," "28," "R1," "Compa," "El Hombre," "El Pleve," "El Canoso," "El Crespo" and "the Old Man" ("RAFAEL CARO QUINTERO"), together with others, did knowingly and intentionally engage in a continuing criminal enterprise, in that the defendant RAFAEL CARO QUINTERO committed violations of Title 21, United States Code, Sections 848(e), 952(a), 959(a), 960 and 963, including Violations One through Ten set forth below, which violations were part of a continuing series of violations of those statutes undertaken by the defendant RAFAEL CARO QUINTERO, who was one of several principal administrators, organizers and leaders of the continuing criminal enterprise, in concert with five or more other persons with respect to whom the defendant RAFAEL CARO QUINTERO occupied a position of organizer, supervisor, and other position of management, and from which continuing series of violations the defendant RAFAEL CARO QUINTERO obtained substantial income and resources, and which enterprise received in excess of $10 million in gross receipts during one or more twelve-month periods for the

4

manufacture, importation and distribution of heroin, cocaine, methamphetamine and marijuana. At least two of the violations involved at least 300 times the quantity of a substance described in Section 841(b)(1)(B) of Title 21, United States Code, to wit: 150 kilograms or more of a substance containing cocaine and 15 kilograms or more of a substance containing methamphetamine. The continuing series of violations, as defined by Title 21, United States Code, Section 848(c), includes Violations One through Ten set forth below:

<u>Violation One</u>
(International Marijuana Distribution –
Approximately 4,900 Kilograms of Marijuana)

8.   On or about February 21, 2015, within the extraterritorial jurisdiction of the United States, the defendant RAFAEL CARO QUINTERO, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved 1,000 kilograms or more of a substance containing marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(G) and 959(d), and Title 18, United States Code, Section 2.

<u>Violation Two</u>
(International Cocaine Distribution –
Approximately 500 Kilograms of Cocaine)

9.   On or about February 25, 2015, within the extraterritorial jurisdiction of the United States, the defendant RAFAEL CARO QUINTERO, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that

5

such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(B)(ii) and 959(d), and Title 18, United States Code, Section 2.

Violation Three
(International Cocaine and Methamphetamine Distribution –
Approximately 1.9 Kilograms of Cocaine and 22 Kilograms of Methamphetamine)

10.  On or about March 5, 2015, within the extraterritorial jurisdiction of the United States, the defendant RAFAEL CARO QUINTERO, together with others, did knowingly and intentionally distribute one or more controlled substances, intending and knowing that such substances would be unlawfully imported into the United States from a place outside thereof, which offense involved (a) 500 grams or more of a substance containing cocaine, a Schedule II controlled substance, and (b) 500 grams or more of a substance containing methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(H), 960(b)(2)(B)(ii) and 959(d), and Title 18, United States Code, Section 2.

Violation Four
(International Cocaine Distribution –
More Than 5 Kilograms of Cocaine)

11.  On or about October 15, 2015, within the extraterritorial jurisdiction of the United States, the defendant RAFAEL CARO QUINTERO, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a

Schedule II controlled substance, in violation of Title 21, United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(B)(ii) and 959(d), and Title 18, United States Code, Section 2.

### Violation Five
(International Marijuana Distribution)

12. On or about December 24, 2015, within the extraterritorial jurisdiction of the United States, the defendant RAFAEL CARO QUINTERO, together with others, did knowingly and intentionally distribute a controlled substance, intending and knowing that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved a substance containing marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 959(a), 960(a)(3), 960(b)(3) and 959(d), and Title 18, United States Code, Section 2.

### Violation Six
(International Cocaine Distribution –
Approximately 1,000 Kilograms of Cocaine)

13. On or about June 11, 2016, within the extraterritorial jurisdiction of the United States, the defendant RAFAEL CARO QUINTERO, together with others, did knowingly and intentionally distribute a controlled substance, intending, knowing and having reasonable cause to believe such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(B)(ii) and 959(d), and Title 18, United States Code, Section 2.

## Violation Seven
(International Cocaine Distribution –
Approximately 1,000 Kilograms of Cocaine)

14. In or about July 2016, within the extraterritorial jurisdiction of the United States, the defendant RAFAEL CARO QUINTERO, together with others, did knowingly and intentionally distribute a controlled substance, intending, knowing and having reasonable cause to believe such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(B)(ii) and 959(d), and Title 18, United States Code, Section 2.

## Violation Eight
(International Marijuana Distribution –
More Than 1,000 Kilograms of Marijuana)

15. On or about October 6, 2016, within the extraterritorial jurisdiction of the United States, the defendant RAFAEL CARO QUINTERO, together with others, did knowingly and intentionally distribute a controlled substance, intending, knowing and having reasonable cause to believe such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved 1,000 kilograms or more of a substance containing marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(G) and 959(d), and Title 18, United States Code, Section 2.

Violation Nine
(International Cocaine Distribution –
Approximately 2,000 Kilograms of Cocaine)

16. On or about December 2, 2016, within the extraterritorial jurisdiction of the United States, the defendant RAFAEL CARO QUINTERO, together with others, did knowingly and intentionally distribute a controlled substance, intending, knowing and having reasonable cause to believe such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 959(a), 960(a)(3), 960(b)(1)(B)(ii) and 959(d), and Title 18, United States Code, Section 2.

Violation Ten
(Murder Conspiracy – Persons Who Posed a Threat
to the Caro Quintero DTO)

17. In or about and between January 1980 and June 2018, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendant RAFAEL CARO QUINTERO, together with others, while engaged in one or more offenses punishable under Section 960(b)(1) of Title 21 of the United States Code, to wit: the crimes charged in Counts Two and Three, did knowingly and intentionally conspire to kill and cause the intentional killing of one or more persons, to wit: persons who posed a threat to the Caro Quintero DTO, and such killings did result, contrary to Title 21, United States Code, Section 848(e)(1)(A), in violation of Title 21, United States Code, Section 846.

(Title 21, United States Code, Sections 848(a), 848(b) and 848(c); Title 18, United States Code, Sections 3238 and 3551 et seq.)

## COUNT TWO
(International Marijuana Distribution Conspiracy)

18. The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

19. In or about and between January 1980 and June 2018, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants RAFAEL CARO QUINTERO, also known as "RCQ," "Cesar," "Don Rafa," "Rafa," "El Senor," "28," "R1," "Compa," "El Hombre," "El Pleve," "El Canoso," "El Crespo" and "the Old Man," ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████ together with others, did knowingly and intentionally conspire to manufacture and distribute a controlled substance, intending, knowing and having reasonable cause to believe that such substance would be unlawfully imported into the United States from a place outside thereof, which offense involved a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 959(a) and 960(a)(3). The amount of marijuana involved in the conspiracy attributable to each defendant as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, was at least 1,000 kilograms or more of a substance containing marijuana.

(Title 21, United States Code, Sections 963, 960(b)(1)(G) and 959(d); Title 18, United States Code, Sections 3238 and 3551 et seq.)

## COUNT THREE
(International Heroin, Methamphetamine and Cocaine Distribution Conspiracy)

20. The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

21. In or about and between February 2015 and June 2018, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants RAFAEL CARO QUINTERO, also known as "RCQ," "Cesar," "Don Rafa," "Rafa," "El Senor," "28," "R1," "Compa," "El Hombre," "El Pleve," "El Canoso," "El Crespo" and "the Old Man," ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ together with others, did knowingly and intentionally conspire to manufacture and distribute one or more controlled substances, intending, knowing and having reasonable cause to believe that such substances would be unlawfully imported into the United States from a place outside thereof, which offense involved: (a) a substance containing heroin, a Schedule I controlled substance; (b) a substance containing cocaine, a Schedule II controlled substance; and (c) a substance containing methamphetamine, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 959(a) and 960(a)(3). The amount of heroin involved in the conspiracy attributable to each defendant as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, was at least one kilogram or more of a substance containing heroin. The amount of cocaine involved in the conspiracy attributable to each defendant as a result of his

11

own conduct, and the conduct of other conspirators reasonably foreseeable to him, was at least five kilograms or more of a substance containing cocaine. The amount of methamphetamine involved in the conspiracy attributable to each defendant as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, was at least 500 grams or more of a mixture or substance containing methamphetamine.

(Title 21, United States Code, Sections 963, 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(H) and 959(d); Title 18, United States Code, Sections 3238 and 3551 et seq.)

## COUNT FOUR
(Use of Firearms in Furtherance of Drug Trafficking)

22. The allegations contained in paragraphs one through five are realleged and incorporated as if fully set forth in this paragraph.

23. In or about and between January 1980 and June 2018, both dates being approximate and inclusive, within the extraterritorial jurisdiction of the United States, the defendants RAFAEL CARO QUINTERO, also known as "RCQ," "Cesar," "Don Rafa," "Rafa," "El Senor," "28," "R1," "Compa," "El Hombre," "El Pleve," "El Canoso," "El Crespo" and "the Old Man," ███████████████████████████████████████████████████████████ together with others, did knowingly and intentionally use and carry one or more firearms, during and in relation to one or more drug trafficking crimes, to wit: the crimes charged in Counts One through Three, and did knowingly and intentionally possess

12

such firearms in furtherance of said drug trafficking crimes, one or more of which firearms was brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 2, 3238 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT ONE

24. The United States hereby gives notice to the defendant charged in Count One that, upon his conviction of such offense, the government will seek forfeiture in accordance with Title 21, United States Code, Section 853(a), which requires any person convicted of such offense to forfeit: (a) any property constituting, or derived from, any proceeds obtained directly or indirectly as the result of such offense; (b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense; and (c) any of his interest in, claims against, and property or contractual rights affording a source of control over the continuing criminal enterprise.

25. If any of the above-described forfeitable property, as a result of any act or omission of said defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a) and 853(p))

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS TWO AND THREE

26. The United States hereby gives notice to the defendants charged in Counts Two and Three that, upon their conviction of either such offense, the government will seek forfeiture in accordance with Title 21, United States Code, Sections 853(a) and 970, which require any person convicted of such offenses to forfeit: (a) any property constituting, or derived from, any proceeds obtained directly or indirectly as the result of such offenses, and (b) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses.

27. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 21, United States Code, Sections 853(a), 853(p) and 970)

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT FOUR

28.  The United States hereby gives notice to the defendants charged in Count Four that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), which require the forfeiture of any firearm or ammunition involved in or used in any knowing violation of Title 18, United States Code, Section 924.

29.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 924(d)(1); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2015R00471/OCDETF #NYNYE-777
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

RAFAEL CARO QUINTERO, et al.,

Defendant.

## SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(d)(1), 3238, 2 and 3551 et seq.; T. 21, U.S.C., §§ 848(a), 848(b), 848(c), 853(a), 853(p), 959(d), 960(b)(1)(A), 960(b)(1)(B)(ii), 960(b)(1)(G), 960(b)(1)(H), 963 and 970; T. 28, U.S.C. § 2461(c))

A true bill.

_____*[signature]*_____
Foreperson

Filed in open court this _____ day,

of _____ A.D. 20 ___

_____
Clerk

Bail, $ _____

Gina M. Parlovecchio, Michael P. Robotti and G. Karthik Srinivasan,
*Assistant U.S. Attorneys (718) 254-7000*