# Mark S. DeMarco

Attorney At Law
100 Lafayette Street, Ste. 501
New York, New York 10013
718 239 7070
Fax 718-239-2141
MSDLaw@aol.com

July 9, 2026

Honorable Frederic Block
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**BY ECF & ELECTRONIC MAIL**

Re:    *United States v. Rafael Caro Quintero*
        **15 Cr. 208 (FB)**

Your Honor:

## Introduction

This Court has scheduled trial to begin in this case on March 8, 2027. By a motion filed on June 16, 2026, the Government seeks an order from this Court to empanel an anonymous jury. This letter is filed in opposition to that motion.

As set forth below, empaneling an anonymous jury in this case would unfairly burden the presumption of innocence and should be rejected in favor of less extreme measures to protect the privacy of the members of the jury. An anonymous jury would poison the atmosphere of the case and serve to bolster the Government's proof by creating the impression that the defendant on trial is guilty and dangerous. Particularly in a case where the Government has charged the defendant with acts of violence, juror anonymity sends the message to each juror that he or she needs to be protected from the defendant on trial. From there, members of the jury could rationally infer that the defendant is both dangerous and guilty.

Accordingly, granting the Government's application would deny the defendant the fair trial guaranteed by the United States Constitution.

## An Anonymous Jury Is Neither Necessary Nor Appropriate for Defendant's Trial

An anonymous jury may not be empaneled in the absence of "strong reason to believe the jury needs protection," since empaneling an anonymous jury burdens the presumption of innocence and impairs a defendant's ability to conduct meaningful voir dire. The empaneling of an anonymous jury is an unusual and drastic measure that is justified only when the Government establishes that it is "genuinely called for." *United States v. Vario,* 943 F.2d 236, 239 (2d Cir.

1

1991); *United States v. Thai*, 29 F.3d 785, 80 I (2d Cir. 1994).

The Second Circuit has repeatedly and consistently held that this deviation from standard methods of jury-selection is permissible only under circumstances where there is a convincing showing by the Government of a "strong reason to believe the jury needs protection." *United States v. Thomas,* 757 F.2d 1359, 1365 (2d Cir. 1985). Without this predicate showing, an anonymous jury may not be empaneled. In assessing whether a jury truly "needs protection," and that, therefore, an anonymous jury is "genuinely called for," the court has emphasized that, "An obstruction of justice charge, particularly one involving jury-tampering, has always been a crucial factor in our decisions regarding anonymous juries." *Vario,* 943 F.2d at 240; *see also United States v. Tutino,* 883 F.2d 1125, 1132-33 (2d Cir. 1989).

The reason a decision to impanel an anonymous jury may come only after a strong showing of its necessity is that the practice places a burden on two important interests: the presumption of innocence and the defendant's interest in conducting a meaningful voir dire. As stated in *United States v. Amuso,* 21 F.3d 1251, 1264 (2d Cir. 1994), in considering a motion for an anonymous jury, a court "must balance the defendant's interest in conducting a meaningful voir dire and in maintaining the presumption of innocence against the jury's interest in remaining free from real or threatened violence and the public interest in having the jury render a fair and impartial verdict." Courts do not reach the balancing test, however, without a credible and convincing predicate showing from the Government that there is, in fact, "strong reason to believe the jury needs protection," defined as a finding that there is "a serious threat to jury safety." *Thomas,* 757 F.2d at 1364-65, Amuso, 21 F.3d at 1264 (quoting Thomas with approval)*; see also United States v. Wong,* 40 F.3d 1347, 1376 (2d Cir. 1994) ("Empanelling an anonymous jury undoubtedly has serious implications for a defendant's interest in effectively conducting voir dire and in maintaining the presumption of innocence.").

In *United States v. Ross,* 33 F.3d 1507 (11th Cir. 1994), the Court summarized the risks of an anonymous jury as follows:

> Unquestionably, the empanelment of an anonymous jury is a drastic measure, one which should be undertaken only in limited and carefully delineated circumstances. An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence.

*Ross,* 33 F.3d at 1519. In *Thomas*, the Court considered the impact on a defendant's presumption of innocence of the practice of impaneling an anonymous jury: The elementary principle that a shield of innocence surrounds a defendant on trial reached back in history at least to early Roman law. *See Coffin v. United States,* 156 U.S. 432, 453-54, 39 L.Ed. 481, 15 S.Ct. 394 (1895). Recognition of this principle and its enforcement are part of the foundation of our system of criminal justice. A particular practice - here the impaneling of an anonymous jury - and its impact on the presumption of innocence must therefore receive close judicial scrutiny and be evaluated in the light of reason, principle and common sense. *757 F.2d at 1363.*

Because of the importance of the interests that are burdened by the practice, an anonymous jury "is a measure that should be taken only with care." *United States v. Bellomo,* 954 F.Supp. 630, 654 (SDNY 1997)*; see United States v. Millan-Colon,* 834 F.Supp. 78 (SDNY 1993) (denying application for anonymous jury)*; United States v. Melendez,* 743 F.Supp. 134, 135 (EDNY 1990) (denying "drastic remedy of an anonymous jury")*; United States v. Coonan,* 664 F.Supp. 861 , 862 (SDNY 1987) (denying anonymous jury in the absence of evidence that the defendants - notwithstanding the fact they were charged with "predicate acts including murder, attempted murder, kidnaping, loansharking, extortion, and narcotics trafficking as part of a racketeering enterprise known as the Westies" - were likely to interfere with the judicial process).

Indeed, even in the appropriate case, empaneling an anonymous jury burdens the presumption of innocence. The cases that have upheld the practice only have done so based upon particular facts that justified the burden placed on the rights of the defendant. Those facts, however, are not present here.

**The Criteria That Justify the Empanelment**
**<u>of an Anonymous Jury Is Not Present Here</u>**

It is well settled that there are five factors relevant to determining the propriety of empanelling an anonymous jury: "(1) the seriousness of the charges; (2) the dangerousness of the defendant; (3) the defendant's ability to interfere with the jury, either by himself or through a criminal organization of which he is a member; (4) previous attempts to interfere with the judicial process by the defendant or his associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that might impair their ability to be fair." *United States v. Thai,* 29 F.3d at 801. However, none of these factors suggest that an anonymous jury is necessary or appropriate for this trial.

**<u>The Seriousness of the Charges and Dangerousness of the Defendant</u>**.

There is no question that the charges in the instant matter are serious. Notably, however, Mr. Quintero is not charged with witness or jury tampering or obstruction of justice.

**The Defendant's Ability to Interfere with the Jury and Previous Attempts**
**<u>to Interfere with the Judicial Process</u>**

The Government contends that because of Mr. Quintero's history of criminal activity; his alleged involvement in the kidnaping and killing of Special Agent Camarena in 1985; his alleged criminal conduct while imprisoned in Mexico and after he was legally released in 2013, and; his "extensive ties to one of the world's most dangerous criminal organizations," jurors may not be willing or able to provide impartial verdicts if their identities are publicly known. (*See Gov't Motion*, p. 4-5).

However, it is not enough for the Government to simply state that because of Mr. Quintero's past criminal conduct and the charged conduct here, an anonymous jury is

appropriate. Nor is an anonymous jury appropriate because of criminal conduct dating back 40 years.

Further, it is important to note that Mr. Quintero has been in custody since his arrival in this district in February 2025. He has been held in solitary confinement subject to Special Administrative Measures ("SAM") imposed by the Attorney General of the United States. Mr. Quintero is essentially confined to a small, windowless cell where he remains alone for 23 hours a day Mondays through Fridays, and 24-hours per day on the weekends.

Except for visits from his legal team, Mr. Quintero is completely isolated. He is prohibited from sharing a cell or communicating in any way with other inmates. (SAMs § 6(a) and (b)). With the exception of occasional monitored telephone and video calls with approved family members, his legal visits are essentially his only contact with the outside world.

28 C.F.R. § 501.3 authorizes the government to impose "special administrative measures" on a defendant if the Attorney General concludes there is a "substantial risk" the defendant will abuse third-party contacts to kill or injure others. 28 C.F.R. § 501.3(a). In this case, the SAMs imposed on Mr. Quintero comprehensively limit Mr. Quintero's third-party communications and also regulate how the defense team may share information with Mr. Quintero and all third parties.

Mr. Quintero will remain detained under these incredibly restrictive conditions during the pendency of this trial and, accordingly, he will not have the ability to interfere with the jury orto communicate with third-parties who may. Therefore, no reasonable juror has cause to fear him personally.

**Media Attention Expected During the Trial**

Ironically, while the government argues that "extensive press coverage justifies an anonymous and partially sequestered jury" (*See Gov't Motion*, p. 15-17), it brazenly chose to publically file the instant motion, fully aware that the press has been closely following this case and monitoring every public filing. This has resulted in the public dissemination of additional media coverage of extraneous, baseless and unduly prejudicial information.[1] Indeed, news

---

[1] See, for example:
www.news247plus.com/news/crime/prosecutors-ask-for-an-anonymous-and-protected-jury-for-the-trial-of-rafael-caro-quintero-52294#google_vignette;

efs.efeservicios.com/texto/requests-anonymous-jury-trial-rafael-caro-quintero/55020650567;

https://www.youtube.com/watch?v=NumN6iz3QRA

stories published prior to or during a trial that reveal a defendant's prior criminal history or bad acts are inherently prejudicial. *See United States v. Williams*, 568 F.2d 464 (5th Cir. 1978). If this Court grants this motion, that too will receive media attention and, more importantly, will further endorse the allegations made by the government in support of its motion.

In any event, defendant respectfully submits that there is nothing to suggest that this trial will garner the type of media attention that could cause extraordinary pressure upon the jury or impair their ability to be fair. To the contrary, it is the specter of an anonymous jury itself that most threatens juror impartiality in this case, since jury anonymity in and of itself carries the potential to taint the jurors' opinions about the defendant.

The interference with the presumption of innocence is a far more serious and realistic consequence than the highly speculative claim that jurors, contrary to their oaths and to the instructions of this Court, would be influenced by media attention.

Furthermore, less burdensome means are available to protect the jury from becoming the focus of unwanted media attention. To the extent that this Court feels it is necessary to keep the names of jurors from the public record, defendant does not object to a procedure that allows the parties access to the names and other information concerning the jurors while withholding that information from the public record.

In the prosecution of Martha Stewart, a prominent celebrity placed on trial in a highly publicized case, the trial judge, in an effort to protect potential jurors' privacy, closed the *voir dire* to the media. In reversing that ruling, the Second Circuit noted that the concerns for juror privacy could have been accomplished by "simply concealing the identities of the prospective jurors" from the media. *See ABC, Inc. v. Stewart,* 360 F.3d 90, 105 (2d Cir. 2004). The Second Circuit also noted that the trial judge in that case had entered an order "prohibiting the media from communicating with jurors or prospective jurors or with their family members until such time as that juror's or potential juror's service was completed." *ABC, Inc.,* 360 F.43d at 94.

Defendant does not object to a similar order being entered in this case as expanded to include a prohibition from any person having contact with jurors. Nor does he object to the jury being informed of such a court order with instructions from the Court to report any violation of that order.

Finally, it is instructive to recall *why* an elevated level of pre-trial publicity is factored into the mix of circumstances that determine whether or not an anonymous jury should be empanelled. As explained in *United States v. Vario, supra,* 943 F.2d 236 (2d Cir. 1991):

> Pre-trial publicity may militate in favor of an anonymous jury because it can "enhance the possibility that jurors" names would become public and thus expose them to intimidation by defendants ' friends or enemies or harassment by the public.

*Vario,* 943 F.2d at 240. The defense suggestion that jurors' names be withheld from the public

Hon. Frederic Block
July 9, 2026

record is a reasonable way to handle such concerns. The facts and circumstances surrounding this trial simply do not justify imposing potentially prejudicial procedures that carry the danger of tainting the jury's impartiality.

**Conclusion**

For the reasons stated, the Government's motion for an anonymous jury should be denied. In the event that the Court grants the Government's motion, an extensive questionnaire is required.

Thank you for your attention to this matter.

Respectfully submitted,

*Mark S. DeMarco*

Mark S. DeMarco
Elizabeth Macedonio
Victor Abreu
James McHugh
*Attorneys for Rafael Caro-Quintero*

cc:    Francisco Navarro, Esq.
       Andrew Wang, Esq.
       Miranda Gonzalez, Esq.
       Chand Edwards-Balfour, Esq.
       Katherine Onyshko, Esq.
       Assistant United States Attorneys
       **By Electronic Mail & ECF**