FJN:ADW/CWE/MG/KPO
F. #2015R00471

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

- against -

No. 15-CR-208 (S-3) (FB)

RAFAEL CARO QUINTERO,
also known as “RCQ,” “Cesar,” “Don Rafa,” “Rafa,” “El Senor,” “28,” “R1,” “Compa,” “El Hombre,” “El Pleve,” “El Canoso,” “El Crespo” and “the Old Man,” and
ISMAEL QUINTERO ARELLANES,
also known as “Fierro,”

Defendants.

– – – – – – – – – – – – – – – – – – – – – – X

THE GOVERNMENT’S REPLY IN FURTHER SUPPORT OF ITS MOTION
FOR AN ANONYMOUS AND PARTIALLY SEQUESTERED JURY


JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Francisco J. Navarro
Andrew D. Wang
Chand W. Edwards-Balfour
Miranda Gonzalez
Katherine P. Onyshko
Assistant U.S. Attorneys
(Of Counsel)

TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 1

A. Seriousness of the Charges .......... 1

B. Past Interference and Present Means to Interfere With the Judicial Process .......... 5

C. Extensive Press Coverage .......... 7

D. Protection of the Defendants' Rights .......... 9

CONCLUSION .......... 11

## PRELIMINARY STATEMENT

The government respectfully submits this reply in further support of its motion for an anonymous and partially sequestered jury. See ECF No. 158 ("Govt. Mot."). In their opposition briefs, neither defendant contests that the charges are serious and violent, that the Caro Quintero DTO inspires fear, or that this case continues to generate significant press coverage. Nor do they explain how the government's proposal, which has been consistently adopted by courts in this Circuit, fails to mitigate any prejudice that might follow from an anonymous and partially sequestered jury. Instead, Caro Quintero contends that: (1) an anonymous and partially sequestered jury is not warranted because he is not formally charged with witness or jury tampering or obstruction of justice; (2) he has no ability to interfere with the judicial process; (3) the withholding of juror identities from the media, but not the parties, will alleviate any juror concerns of fear and safety; and (4) an anonymous and partially sequestered jury will unconstitutionally burden his presumption of innocence. ECF No. 160 ("Caro Quintero Opp."). Meanwhile, Quintero Arellanes' strategy is to distance himself from his co-defendant, dispute the factual allegations against him, and ignore his own history of interference with the judicial process. ECF No. 163 ("Quintero Arellanes Opp.").

For the reasons discussed below, and in the Government's Motion, the defendants' arguments should be rejected, as an anonymous and partially sequestered jury is warranted, appropriate, and necessary under the facts of this case and governing case law.

## ARGUMENT

### A. Seriousness of the Charges

Caro Quintero does not contest that the charges are serious or that he is charged with acts of violence; instead, he merely states that he is not charged with witness or jury tampering or obstruction of justice. Caro Quintero Opp. at 3. Such charges are not necessary for the

empanelment of an anonymous and partially sequestered jury, especially where there are, in fact, allegations of witness tampering. See, e.g., United States v. Ashburn, No. 13-CR-0303 NGG, 2014 WL 5800280, at *7 (E.D.N.Y. Nov. 7, 2014) ("the Government need not charge a defendant with obstruction of justice in the indictment in order for this factor to militate in favor of protecting the jury."); Govt. Mot. at 13-14 (citing cases). As described in the Government's Motion, Caro Quintero has tampered with potential witnesses, including by authorizing the murder of a co-conspirator he believed was cooperating against the Caro Quintero DTO with United States law enforcement. Govt. Mot. at 13. He has also engaged in obstructive conduct, including evading capture for nine years in Mexico. Id. at 12-13.

For his part, Quintero Arellanes argues that none of the allegations about co-defendant Caro Quintero's violence concern him. Quintero Arellanes Opp. at 7-8. But an individual need not be charged with directly participating in violence for an anonymous and partially sequestered jury to be warranted. Indeed, courts routinely grant such applications where a defendant is alleged to have provided material support to terrorist organizations. See, e.g., United States v. Kasimov, No. 15-CR-95 (WFK), ECF No. 398 (E.D.N.Y. Sep. 11, 2019) (granting government's request for an anonymous, partially sequestered jury in case involving defendant charged with conspiring and attempting to provide material support to ISIS); United States v. Pugh, 150 F. Supp. 3d 218, 224 (E.D.N.Y. 2015) ("The question is not whether Defendant himself poses a threat to the jury, but rather whether there is good reason to believe that the jury needs protection.").

As argued in its opening motion, at trial, the government will offer evidence that as a high-ranking lieutenant within the Caro Quintero DTO, Quintero Arellanes provided substantial support to the success of the organization and to the security and safety of its leader, Caro Quintero.

Specifically, the government expects to offer, inter alia, intercepted communications and witness testimony that Quintero Arellanes had oversight over the Caro Quintero DTO's security apparatus and would oversee logistics for the organization, including the facilitation of narcotics activities. In one such communication, Quintero Arellanes and a co-conspirator discussed receiving authorization from Caro Quintero to "chop [the] heads off" any narcotics smuggler who travelled through the geographic region controlled by the Caro Quintero DTO. In another communication, Quintero Arellanes discussed purchasing firearms with a co-conspirator: "Yeah I am getting two 22 of the long ones; you should see how nice they are. . . They are like the 'cop killers,' but smaller. They're so cool, the magazine holds 30 rounds, ha ha ha." Quintero Arellanes continued: "It's a great gun, and if you get caught with it, you can get out on bail."[1] One or more witnesses will also describe how Quintero Arellanes carried "an assault rifle . . . while traveling in an armed convoy that was safeguarding Caro Quintero." ECF No. 74 at 5. Thus, the proffered trial evidence and the allegations in the Indictment against Quintero Arellanes—which include charges of international narcotics conspiracy and use of firearms in support of the Caro Quintero DTO—establish the potential dangerousness of Quintero Arellanes. See, e.g., United States v. Wilson, 493 F. Supp. 2d 397, 398 (E.D.N.Y. 2006) (dangerousness is "demonstrated by the seriousness of the charged crimes, including whether the defendant is charged with participating in a large-scale criminal enterprise").

Quintero Arellanes relies on United States v. Vario, 943 F.2d 236 (2d Cir. 1991) to argue that an anonymous jury cannot be justified "merely by association, guilt by relationship, or the notoriety of a codefendant," Quintero Arellanes Opp. at 5, but those terms do not describe the

---

[1] The government is providing draft translations of these Spanish communications, which are subject to change.

allegations against Quintero Arellanes here. Quintero Arellanes' position as a high-ranking lieutenant within the Caro Quintero DTO, his participation in the drug trafficking operation, and his efforts to assist the leader of the Caro Quintero DTO evade law enforcement distinguish him from the defendant in Vario and rebut any claim that Quintero Arellanes is a defendant merely due to "guilt by association." Quintero Arellanes Opp. at 6.

Quintero Arellanes cannot distinguish United States v. Gotti, 459 F.3d 296 (2d Cir. 2006) for the same reason. In Gotti, the Second Circuit affirmed this Court's use of an anonymous jury for defendant Peter Gotti, who was the head of the Gambino Family, and his three co-defendants, who were members or associates of the same family, one of whom had a high-ranking position. Id. at 345-46. Like the co-defendants in Gotti, Quintero Arellanes was a "member[] of a powerful crime organization" with a high-ranking position, who has engaged in obstructive behavior and was detained, and "substantial publicity [i]s expected" in the case. Id.; see Govt. Mot. at 3 (describing Quintero Arellanes' role), 6-7 (citing press coverage of both Caro Quintero and Quintero Arellanes). Quintero Arellanes, despite his efforts to do so, cannot separate himself from the organization he is charging with supporting.

As a fallback, Quintero Arellanes disputes the factual allegations, claiming that his position as "head of security" is a title invented by the government (though he says nothing about his position as high-ranking lieutenant of the Caro Quintero DTO), that any firearms carried were in connection with his livestock business, and that firearms nicknamed "cop killers," which are apparently related to cattle control rather than killing police officers, do not have any connection to dangerousness. Quintero Arellanes Opp. at 8-9.

The government has already proffered evidence of Quintero Arellanes' role in the Caro Quintero DTO and how members of the Caro Quintero DTO employed violence to protect

the organization, and it need not repeat it here. See, e.g., supra at 3; Govt. Mot. at 3-5; ECF No. 74; ECF No. 87. A grand jury sitting in this District also returned an indictment against Quintero Arellanes based, in part, on these very allegations. In any event, none of the legal authorities supporting an anonymous and partially sequestered jury in this case require a defendant to be convicted of a crime in the United States before that crime can be used to justify the protection of the jury. If that were the case, no defendant facing federal charges for the first time, including those who were fugitives or who are extradited to this country, would ever be tried by an anonymous jury, regardless of the risks posed by their criminal membership, violence, and past attempts to interfere with the judicial process. The case law simply does not reflect Quintero Arellanes' suggested approach of requiring a defendant to be convicted (presumably necessary to make unproven allegations sufficiently weighty for the Court to consider them) before the jury can be protected. Indeed, courts have held that charges alone, "including whether the defendant is charged with participating in a large-scale criminal enterprise," are one factor that may justify an anonymous jury. Wilson, 493 F. Supp. at 398.[2] Quintero Arellanes' arguments disputing the allegations in the Indictment are more appropriately reserved for trial.

B. Past Interference and Present Means to Interfere With the Judicial Process

Caro Quintero principally relies on the fact that his confinement subject to Special Administrative Measures ("SAMS") prevents him from interfering with the judicial process. By focusing his opposition almost exclusively on his personal conduct, see Caro Quintero Opp. at 4 (describing SAMS restrictions), Caro Quintero ignores the risk posed to the jury by his criminal

[2] Quintero Arellanes also argues that because he was not added as a defendant until the filing of the second superseding indictment, that fact somehow affects the analysis of whether an anonymous and partially sequestered jury should be empaneled. He provides no case law to support his argument, nor does his reasoning bear any weight. Quintero Arellanes Opp. at 1-4.

associates who might attempt to interfere with the jury, even if not at Caro Quintero's specific and personal direction. Those associates, however, pose a risk of interference to the jury in this case, and Caro Quintero's history demonstrates that he has the ability to undertake criminal conduct through intermediaries.

For instance, Caro Quintero continued to manage his vast narcotics enterprise even while in prison from 1985 to 2013, and during his time as a fugitive from 2013 to 2022 he had a network of armed guards and others—including Quintero Arellanes—at the ready to help him evade detection and recapture. Caro Quintero also ignores the obvious implication that there are criminals not previously affiliated with him who might wish to curry favor with him because of his notoriety. Even if the government were certain that Caro Quintero himself had no inclination or means to interfere with the jury in this case, the risk of harm from criminal associates who might attempt to assist Caro Quintero would still be a factor justifying an anonymous and partially sequestered jury here. See Vario, 943 F.2d at 241 (holding that an anonymous jury may be warranted where there is a "history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf").

Quintero Arellanes argues that this factor weighs in his favor as there are no allegations against him related to witness tampering or "attempt[s] to obstruct a prosecution." Quintero Arellanes Opp. at 8. That argument is demonstrably false. As described in the Government's Motion, Quintero Arellanes assisted Caro Quintero in evading detection while he was a fugitive from justice between 2013 and 2022, including by communicating Caro Quintero's orders to other members of the Caro Quintero DTO. Govt. Mot. at 3. Quintero Arellanes was further responsible for detecting plans by Mexican authorities to capture Caro Quintero and for warning the organization. Id. All of these efforts were "attempt[s] to obstruct a prosecution." No

authority cited by Quintero Arellanes requires this Court to disregard this corruption of the judicial process on the grounds that they occurred in Mexico rather than in the United States.

Additionally, both defendants argue that "no reasonable juror has cause to fear [them] personally," Caro Quintero Opp. at 4; see Quintero Arellanes Opp. at 7-9, but the trial evidence will reveal the ways that the Caro Quintero DTO retaliated against perceived enemies, including as described here and in the Government's Motion. See supra at 3; Govt. Mot. at 12-13. As the Second Circuit has stated, "even a general fear of retaliation could well affect the jury's ability to render a fair and impartial verdict." United States v. Thomas, 757 F.2d 1359, 1364 (2d Cir. 1985); see Vario, 943 F.2d at 241 ("[A] demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendants and his associates . . . would cause a juror to reasonably fear for his own safety"); see also United States v. Barnes, 604 F.2d 121, 141 (2d Cir. 1979). There is a legitimate concern in this case that jurors may fear that associates of either defendant and/or members of the Caro Quintero DTO will target them if their identities are made public during trial. See United States v. Stewart, 590 F.3d 93, 125 (2d Cir. 2008) (noting "the reasonable likelihood that the pervasive issue of terrorism would raise in the jurors' minds a fear for their individual safety"). Accordingly, an anonymous jury is also warranted because legitimate concerns and fears held by potential jurors could risk interference with the judicial process.

C. Extensive Press Coverage

Neither defendant denies that this case has garnered significant media attention; indeed, they describe how "the press has been closely following this case and monitoring every public filing" and cite to the "widespread reporting" in the case. Caro Quintero Opp. at 4; Quintero

Arellanes Opp. at 9.[3] As the Second Circuit and courts in this District have recognized, this level of press interest and publicity is a factor supporting an anonymous and partially sequestered jury. See Govt. Mot. at 15-17 (collecting authorities).

Caro Quintero responds that a gag order restricting press reporting about the jurors could better accomplish the objective of protecting the jury in this case. Caro Quintero Opp. at 5. But Second Circuit case law makes clear that a prior restraint restricting publication of juror identities is itself "one of the most extraordinary remedies known to our jurisprudence," and the Second Circuit has directed courts to consider jury anonymity as an alternative to prior restraints forbidding the publication of juror identities. United States v. Quattrone, 402 F.3d 304, 312 (2d Cir. 2005); see United States v. Wilson, 925 F. Supp. 2d 410, 412 (E.D.N.Y. 2013) ("Before the court may impose any sort of 'gag order,' it must, among other things, determine whether other available remedies would effectively mitigate the prejudicial publicity. . . . These possible measures include . . . an anonymous jury[,] and sequestration of jurors.") (internal quotation marks and citations omitted). And such prior restraint, even if legally justified, would not protect the jury from interference or harm by Caro Quintero, Quintero Arellanes, or their criminal associates.

Quintero Arellanes argues that an anonymous jury is unwarranted because he is not as notorious as his co-conspirator Caro Quintero. Quintero Arellanes Opp. at 9. The question, of course, is not who has generated more press attention, Caro Quintero or Quintero Arellanes. When

[3] Caro Quintero partially blames the public filing of this motion as the reason for the extensive press coverage, but he fails to identify a basis for sealing the motion, which is no more prejudicial than the allegations in the Indictment or otherwise already in the public domain through court filings and hearings. Indeed, except for letters filed ex parte for witness safety, anonymous jury motion briefing is typically made public. See, e.g., United States v. Guzman Loera ("El Chapo"), No. 09-CR-466 (BMC), ECF No. 182; United States v. Garcia Luna, No. 19-CR-576 (BMC), ECF No. 80; United States v. Kelly ("R Kelly"), No. 19-CR-286 (AMD), ECF No. 71. During voir dire, the government expects the Court to ask potential jurors whether they have been exposed to this case through any media coverage.

analyzing the question of whether the trial is likely to attract media attention and publicity, "the question does not turn on the volume of pre-trial news coverage alone; rather, courts consider both the amount and nature of the publicity." Ashburn, 2014 WL 5800280, at *12. With respect to the amount of publicity, the Second Circuit in Vario held that the district court did not err in determining that significant media attention was likely at trial, even though only one pre-trial article had been written. 943 F.2d at 240. Here, there has already been reporting on Quintero Arellanes—even before Caro Quintero was transferred to the United States—because of his role in the Caro Quintero DTO, see Govt. Mot. at 6-7, and there also is likely to be substantial press coverage of the trial.

D. Protection of the Defendants' Rights

Both defendants argue that an anonymous and partially sequestered jury will impermissibly infringe on their constitutional rights because the jury will assume that they are dangerous due to their anonymity and transportation by the United States Marshals Service ("USMS"). Caro Quintero Opp. at 4-5; Quintero Arellanes Opp. at 10-11. However, as explained in the Government's Motion, the use of an anonymous jury does not infringe on a defendant's rights provided that (1) "the jurors [are given] a plausible and nonprejudicial reason for not disclosing their identities"; and (2) "the court conducts a voir dire designed to uncover any bias as to the issues or the defendants." United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995).

The Second Circuit has already confirmed that any prejudice can be mitigated by the Court advising the jury that their names are not being disclosed to the government, the defendants or the public out of respect and concern for their privacy, and that transportation is being provided for them to protect their privacy and to ensure that the trial can proceed expeditiously. Govt. Mot. at 17-18. The jurors may also accurately be informed that their identities are being withheld due to anticipated media interest, which would prevent any arguable

inference that the defendants pose a danger to them. See e.g., United States Kaziu, 559 F. App'x 32, 38 (2d Cir. 2014) ("the district court told jurors that their identities were being hidden only because of the extensive media coverage and did not implicate [the defendant's] dangerousness"); United States v. Tutino, 883 F.2d 1125, 1133 (2d Cir. 1989) (upholding anonymous jury procedure where the jury was instructed that "[i]t is a common practice followed in many cases in Federal court to keep the names and identities of the jurors in confidence. This is in no way unusual"); United States v. Kelly, No. 19-CR-286 (AMD), 2020 WL 8482693, at *3 (E.D.N.Y. Oct. 8, 2020) (explanation that "anonymous jurors are commonplace in high profile cases because of media interest" will not unduly burden defendant); United States v. Guzman Loera, No. 09-CR-466 (BMC), 2018 WL 11731248, at *2 (E.D.N.Y. Feb. 5, 2018) ("any potential prejudice to the defendant will be mitigated when the Court advises the jury that their names are not being publicly disclosed out of respect and concern for their privacy . . . and [] neither the Government nor the defendant will know their identities."). The Court should have confidence in time-tested methods for protecting the integrity of the judicial process.

Further, the use of an anonymous jury will not conflict with the defendants' rights to conduct meaningful voir dire. The Court has substantial discretion in controlling and limiting the voir dire process. See Rosales-Lopez v. United States, 451 U.S. 182, 189 (1981) ("federal judges have been accorded ample discretion in determining how best to conduct the voir dire"); Barnes, 604 F.2d at 137 (trial court has "broad discretion" in conducting voir dire). A full voir dire may be conducted about subjects other than the juror's name, address and employer's name, and the parties and counsel will have an unrestricted opportunity to observe the jurors during this process. Accordingly, under the circumstances presented, empaneling an anonymous jury will not prejudice the defendants.

Finally, Quintero Arellanes worries "that transportation of the jurors by the United States Marshals Service and restriction of their movements during trial days" will lead the jury to infer his guilt. Quintero Arellanes Opp. at 11. As explained in the Government's Motion, the government proposes that the jury simply be instructed that the daily transportation and their escort within the courthouse is being provided to protect their privacy and to ensure that the trial proceeds expeditiously. Gov. Mot. at 18-19. Of course, it will be no surprise to jurors or other members of the public that courthouses are generally highly secure buildings and that members of the courthouse security staff are armed. An appropriate explanation to the jury will serve to protect the defendants' rights while permitting the USMS to adequately safeguard the members of the jury from outside interference or influence.

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the Court grant the Government's Motion for an anonymous and partially sequestered jury.

Dated: Brooklyn, New York
October 7, 2026

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By: /s/ Miranda Gonzalez
Francisco J. Navarro
Andrew D. Wang
Chand W. Edwards-Balfour
Miranda Gonzalez
Katherine P. Onyshko
Assistant United States Attorneys
(718) 254-7000